CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 26 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CABELL RIFFE CLATTERBAUGH, | ) ) ) | Civil Action No. 7:12cv00471 |
| Petitioner, | ) ) ) | **§ 2254 MEMORANDUM OPINION** |
| v. | ) ) | |
| HAROLD W. CLARKE, | ) ) | By: Samuel G. Wilson |
| Respondent. | ) ) | United States District Judge |

Cabell Riffe Clatterbaugh brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence in the Circuit Court of Albemarle County, Virginia, for breaking and entering in violation of Va. Code § 18.2-90, attempted robbery in violation of Va. Code § 18.2-58, unlawful wounding in violation of Va. Code § 18.2-51, and use of a firearm in the commission of a felony in violation of Va. Code § 18.2-53.1. Clatterbaugh raises two ineffective assistance of counsel claims, and the matter is before the court on the respondent's motion to dismiss. The court finds that the Supreme Court of Virginia has adjudicated Clatterbaugh's claims on the merits and that adjudication was not contrary to clearly established federal law, or based on an unreasonable determination of the facts. Accordingly, the court grants the respondent's motion to dismiss.

I.

In the early morning hours of July 27, 2007, Joshua Mayo invited Michelle Laman and Jay Hassan to his house at the end of a cul-de-sac on Bennington Road in Albemarle County. Laman and Hassan helped Mayo pack for an upcoming move, consumed some

beer, smoked some marijuana, and used a small amount of cocaine. Several other friends stopped by between the hours of 3:00 a.m. and 5:00 a.m. Mayo, Laman, and Hassan stayed up packing boxes until approximately 6:30 a.m.

A short time later, a white, late-model Acura drove into the cul-de-sac and backed in front of the house, and the driver emerged.[1] Laman allegedly looked out the window and asked aloud, "What's Cabell doing here?" When Mayo and Hassan asked, "Who is Cabell," Laman responded, "It's Cabell Clatterbaugh, I went to high school with him." (Tr. 353.) As Mayo observed the car through the window, he heard a knock at the door. (Tr. 213.) When Mayo opened the door, an assailant pushed his way into the residence and accompanied Mayo through the house at gunpoint, looking for money. (Tr. 214, 216–17.) The assailant fled the scene a short time later.[2]

Detectives gathered evidence and concluded that the individual involved was Cabell Clatterbaugh. A grand jury returned an indictment against Clatterbaugh, and a jury trial was held in the Circuit Court for Albemarle County in March 2009. At trial, Mayo identified the

---

[1] At trial, Mayo's neighbor testified that he heard a car coming down Bennington Road at a high speed between 6:30 and 7:00 a.m. He observed a young male driving the car and noticed that the hood was slightly open in the front as if it had been in an accident. (Tr. 423.) At trial, Clatterbaugh's mother testified that as the result of an accident, Clatterbaugh's car hood was damaged in a manner that prevented it from closing completely. (Tr. 619.)

[2] Albemarle County Police Corporal Steve Wilkins testified that he drove around the area near Bennington Road looking for the suspect involved in the home invasion or the suspect's vehicle after receiving information from dispatch regarding a white Acura. (Tr. 502, 526.) At approximately 7:15 a.m., Wilkins saw what he believed was the suspect's vehicle driving on Hydraulic Road. (Tr. 503–04.) Wilkins testified that he had a face-to-face view of the suspect and that he knew for a fact it was Clatterbaugh. (Tr. 508.) Wilkins pursued the vehicle, but lost sight of it on Soloman Road. (Tr. 507.) At approximately 9:30 a.m., Wilkins located the vehicle in a parking lot behind Soloman Road. (Tr. 509.) The police brought a trained bloodhound to the scene. The dog's handler, Detective Stuart Garner, Jr., of the Louisa County Police Department, testified that he provided the dog with scent articles from the driver's seat of the white Acura, and the dog led him to a Kentucky Fried Chicken (KFC) off Route 29. (Tr. 578, 570–72.) Garner testified that the dog clearly "obtained the scent of the last person that had driven the car and that was . . . on foot." (Tr. 576.) Finally, witness Tamika Turner testified that she and the defendant's girlfriend got up early to pick up Clatterbaugh from the "KFC exit at 250 and [Route 29]." (Tr. 695, 704.)
Other evidence introduced at trial revealed Clatterbaugh discussed the robbery and location of his vehicle on recorded jail telephone conversation tapes.

2

assailant as Cabell Clatterbaugh.[3] At the conclusion of Mayo's testimony at trial, as Mayo left the witness stand, the trial court advised him not to "be around anyone who is discussing this case." (Tr. 291.) Mayo replied, "I find when I'm outside of the courthouse and outside of this case there's a lot of people from the other side that approach me. Is that something that I need to—I don't talk and I just try to run away from them?" (Tr. 292.) To this, the trial court advised Mayo that he would need to walk away and that he was not to talk with anyone about the case. (Id.) Mayo then asked, "And if I'm threatened?" (Id.) Counsel objected and said, "I have a motion." (Id.) After the next witness concluded, counsel clarified that he had a "motion for mistrial." (Tr. 347.) Counsel specifically refused a cautionary instruction as a potential remedy. (Tr. 349.) The court considered the motion for mistrial and denied that motion, finding that Mayo's comments gave no indication that Clatterbaugh was involved, and there was no "manifest injustice" justifying a mistrial. (Id.)

The second occasion giving rise to a motion for mistrial occurred during the testimony of Officer Ron Kesner. The prosecutor asked Kesner to recount Michelle Laman's statements of how she knew that the defendant was Cabell Clatterbaugh. (App. 295–96.) Kesner said, "Well she relayed to me that she had—that she used to go to school with Mr. Clatterbaugh and that that's how she knew him." (App. 296–97.) Kesner continued, "She stated that she hadn't seen him in several years and that she knew that he had just recently been released from jail." (Id.) Counsel again interjected, "Judge, I'm

---

[3] The Virginia Court of Appeals interpreted the evidence in the light most favorable to the Commonwealth; however, this court notes that at trial, Mayo admitted that he failed to identify Clatterbaugh from a photo array presented to him prior to the preliminary hearing. (Tr. 796–807.) Mayo admitted that he only claimed to recognize Clatterbaugh after he was brought out in his jail uniform and stood next to his counsel at the preliminary hearing. (Tr. 808–09.) Likewise, Laman stated at trial that while she did say something to the effect of "Cabell's [Clatterbaugh's] here," she was intoxicated and no longer believed the perpetrator to be Clatterbaugh. (Tr. 382–83, 387, 413–14.) Hassan also failed to personally identify Clatterbaugh as the intruder. (Tr. 293, 304.)

3

going to object. I have a motion." (App. 297.) The prosecutor continued to ask several more questions and the defendant objected to different testimony on another basis, and said nothing about his prior objection or his "motion." (App. 297–98.)

Some time after the conclusion of Kesner's testimony, counsel told the court that he had a motion for a mistrial based on Kesner's testimony regarding Laman's statement. (Tr. 480.) Counsel again refused a cautionary instruction, responding, "all . . . that . . . does is repeat it." (Id.) The trial court said it did not believe that the incident justified a mistrial but took the motion for a mistrial under advisement. (Tr. 484.) After the jury had retired for sentencing, defense counsel renewed his motion for a mistrial. (Tr. 1092.) The trial court denied his motion, stating:

> For example, Officer Kesner testified at one point about the defendant being in jail, and while that certainly was objectionable, clearly later on in the Commonwealth's case, it was made known that the defendant had been in jail and Officer Kesner did not offer when or where because the Commonwealth offered a copy of the conversation from the jail to another part, so that evidence was going to get in, so the court cannot find now that there is a manifest injustice . . . ."

(Tr. 1091.)

The jury found Clatterbaugh guilty of breaking and entering, attempted robbery, unlawful wounding, and use of a firearm in the commission of a felony. The court sentenced Clatterbaugh to thirty-one years' incarceration, with five years suspended. Clatterbaugh appealed to The Court of Appeals of Virginia, arguing, inter alia, that the trial court erred by refusing to grant his motions for mistrial.[4] That court found no manifest

---

[4] On appeal, Clatterbaugh also argued that the trial court erred in limiting the scope of his cross-examination of the Commonwealth's witnesses; that the trial court abused its discretion when it admitted evidence without a proper foundation; and that the trial court erred when it allowed the Commonwealth to impeach one of its witnesses with prior inconsistent statements.

4

probability that the trial court's ruling was prejudicial,[5] concluded that Clatterbaugh's motions for mistrial were untimely and thus waived for appellate purposes, and affirmed Clatterbaugh's convictions, and the Supreme Court of Virginia refused his petition for appeal.

Clatterbaugh then filed a state habeas petition in the Supreme Court of Virginia, claiming his counsel rendered ineffective assistance in failing to timely move for a mistrial or otherwise preserve his mistrial motions for review on direct appeal.[6] The Supreme Court of Virginia found that Clatterbaugh could not show a reasonable probability that, but for counsel's alleged errors, the result of his trial would have been different and that he, therefore, failed to satisfy the prejudice prong of Strickland v. Washington, 466 U.S. 668,

---

[5] Va. Code § 8.01-361 allows a trial court to discharge a jury when there is a "manifest necessity" for the discharge, and the trial judge has broad discretion in determining situations in which a mistrial is appropriate. Turnbull v. Commonwealth, 216 Va. 328, 335 (1975). The Court of Appeals of Virginia "will not reverse the trial court's denial of a motion for mistrial unless a manifest probability exists that the trial court's ruling was prejudicial." Perez v. Commonwealth, 40 Va. 648, 654 (2003). (ECF No. 7-3.)

[6] Specifically, Clatterbaugh alleged the following:
In violation of the 5th, 6th and 14th Amendments to the United States Constitution and Article I Section 8 of the Virginia Constitution, Petitioner was denied his constitutional right to effective assistance of counsel when:
> Counsel objected, but failed to timely move for a mistrial and otherwise preserve the arguments for review on direct appeal when (1) the Commonwealth's main eyewitness, Mayo, made remarks in front of the jury regarding what he should do if contacted outside the courtroom by "people on the other side" and asked what to do if he is threatened, and, (2) Officer Kesner testified that Laman had not seen the petitioner in several years and "knew that he had been recently released from jail." Counsel did not timely request a mistrial at the time the objectionable words were spoken, as the law require [sic], and counsel should not have argued against the Commonwealth's subsequent request for a mistrial. Due to the untimeliness of counsel's motions for a mistrial, the Court of Appeals considered the motions waived for appellate review (and could have considered the motions waived because counsel objected to the Commonwealth's request for a mistrial). The objectionable instances in (1) and (2) individually and collectively, were highly prejudicial to the petitioner and resulted in an unfair trial, a denial of the right to confront his accusers, and a denial of due process. Thus, if the motions had been timely made and not waived in any manner, the petitioner would have been successful on appellate review and granted a new trial on all the charges.

5

687 (1984). (ECF No. 7-7.) Essentially, it concluded that neither motion warranted a mistrial.

Clatterbaugh's current federal habeas petition raises the same ineffective assistance of counsel claims raised in his state habeas petition: failure to timely move for a mistrial or otherwise preserve the arguments for review on direct appeal. The respondent has moved to dismiss, and the case is now ripe for adjudication.

## II.

Clatterbaugh claims that he received ineffective assistance of counsel at trial, that the Supreme Court of Virginia unreasonably adjudicated his habeas petition, and that its adjudication is entitled to no deference. The court rejects Clatterbaugh's claims and dismisses his petition.

Clatterbaugh's federal habeas petition is governed by 28 U.S.C. § 2254 and Chapter 154 of the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104-132, 110 Stat. 1214, 28 U.S.C. §§ 2261–66 ("AEDPA"). This "federal habeas scheme leaves primary responsibility with the state courts." Cullen v. Pinholster, 131 S. Ct. 1388, 1399 (2011). Consequently, in almost all circumstances, petitioners proceeding under § 2254 must exhaust all available state court remedies before seeking relief in federal court. 28 U.S.C. § 2254(b). After a state court has adjudicated a petitioner's habeas claims on the merits, Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000), the AEDPA requires the federal court to defer to the state court's decision except in rare circumstances.

The state court's factual determinations are "presumed to be correct," and the petitioner bears the burden of rebutting that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The court considers a state court's adjudication

contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412–13 (2000). A state court decision unreasonably applies clearly established federal law if the court identifies the correct legal principle, but unreasonably applies it to the facts of the case. Id. at 413.

It is insufficient that a state court applied federal law incorrectly; a federal habeas court may grant relief only if it determines that the state court unreasonably applied federal law. Id. at 411. In making that determination, "a habeas court must determine what arguments or theories could have supported the state court's decision; and then it must ask whether it is possible fair minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Harrington v. Richter, 131 S. Ct. 770, 776 (2011). Section 2254(d) review, therefore, is limited to the record that was before the state court. Cullen, 131 S. Ct. at 1398.

To establish an ineffective assistance of counsel claim, Clatterbaugh must demonstrate that his counsel's performance was deficient and that the deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 685 (1984). To establish deficient performance, Clatterbaugh must show that "counsel's representation fell below an objective standard of reasonableness," considering the circumstances as they existed at the time of the representation. Id. at 687–88. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered

sound trial strategy.'" Strickland, 466 U.S. at 689 (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)). As it is "all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, . . . [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Even if he shows that counsel's performance was deficient, Clatterbaugh is not entitled to habeas relief unless he satisfies the second Strickland prong by showing that counsel's errors "actually had an adverse effect on [his] defense." Id. at 693. At minimum, Clatterbaugh must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694–95. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). If it is clear that no prejudice resulted from an alleged error, the court need not inquire whether the error amounts to deficient representation. Strickland, 466 U.S. at 697.

When evaluating claims of ineffective assistance of counsel, a federal habeas court may grant relief only if the state court decision unreasonably applied the more general standard for ineffective assistance of counsel claims established by Strickland. "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 112 (2009). Therefore, the review of a Strickland claim under § 2254(d) is "doubly deferential." Id.

8

With these precepts in mind, Clatterbaugh's claim that he is entitled to federal habeas relief because his counsel failed to timely move for a mistrial or otherwise preserve objections for review on direct appeal is a non-starter. The trial court denied the mistrial motions on the merits, and on habeas review the Supreme Court of Virginia essentially concluded that Clatterbaugh had failed to demonstrate that the trial court ruled incorrectly on the merits. As the state court of last resort, the Supreme Court of Virginia is uniquely positioned to decide a question of prejudice that is grounded on a question of state law. (ECF No. 7-7.)[7] Its implicit conclusion that the timeliness of the motions was inconsequential and not prejudicial is unassailable. It follows that Clatterbaugh has failed to advance a viable ineffective assistance claim, and the court will dismiss his petition.

### III.

For the above-stated reasons, the court dismisses Clatterbaugh's habeas petition.

**ENTER:** April 26, 2013.

s/ SAMUEL G. WILSON
UNITED STATES DISTRICT JUDGE

---

[7] Though on direct appeal the Court of Appeals of Virginia opined that the mistrial motions were untimely, it also found the motions to be without merit.

9